**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**LAREDO DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,       )<br>            Plaintiff,                                )<br>                                                         )<br>v.                                                       )<br>                                                         )<br>MARIA E. ROSALES,                       )<br>            Defendant.                           ) | Case No. 5:20-cv-00183 |

### FIRST AMENDED UNITED STATES OF AMERICA'S COMPLAINT

The United States of America, pursuant to 31 U.S.C. § 3711(g)(4)(C), at the direction of the Attorney General of the United States, or his delegate, and at the request of the Secretary of the Treasury, or his delegate, files this First Amended Complaint against Defendant, Maria E. Rosales ("Rosales") to reduce to judgment and collect outstanding civil penalties assessed against her for her willful failure to timely report his financial interest in a foreign bank account as required by 31 U.S.C. § 5314 and its implementing regulations, plus accrued interest on the assessed penalties, late payment penalties and associated fees.  Additionally, the United States intends to proceed under the Federal Debt Collection Practices Act (28 U.S.C. § 3001 et seq.) to collect any judgment it obtains in this case, including to the use of all appropriate pre-judgment remedies, post-judgment remedies and the additional surcharge as authorized by 28 U.S.C. § 3011.  In support hereof, the United States alleges as follows:

### JURISDICTION AND VENUE

1.      The Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1345 and 1355 because this action arises under a federal statute for the recovery of a penalty and the United States is the Plaintiff.  Further, upon completion of service of process, this Court will have personal jurisdiction over Rosales pursuant to Fed. R. Civ. P. 4.

1

2. Venue is proper in this district under 28 U.S.C. §§ 1391(b)(1), (b)(2) and (c)(1) because Rosales, a United States citizen, is a resident of Houston and the substantial part of the events and omissions occurred in the Laredo Division of the Southern District of Texas. Alternatively, venue may be proper under 28 U.S.C. § 1395.

## ROSALES FAILED TO TIMELY REPORT HER FINANCIAL INTEREST IN NUMEROUS FOREIGN BANK ACCOUNTS

3. 31 U.S.C. § 5314 authorizes the Secretary of the Treasury to require United States citizens to report certain transactions with foreign financial agencies. Under the statute's implementing regulations, "[e]ach United States person having a financial interest in, or signature authority over, a bank, securities, or other financial account in a foreign country shall report such relationship" to the IRS for each year in which such relationship exists. 31 C.F.R. § 1010.350(a).

4. To fulfill this requirement, a person must file a Form TD F 90-22.1, "Report of Foreign Bank and Financial Accounts," commonly known as an "FBAR." *See id.* For the 2005 through 2012 years at issue, an FBAR was due by June 30 "of each calendar year with respect to foreign financial accounts exceeding $10,000 maintained during the previous calendar year." 31 C.F.R. § 1010.306(c).[1]

*Rosales' financial interest and signature authority in Foreign Mexican Accounts*

5. Rosales obtained a law degree from the Universadad Autonoma De Mexico. Later in 1983, Rosales obtained a Mexican customs broker's license.

6. In 1996, Rosales became a lawful permanent resident of the United States.

---

[1] Beginning with the 2016 tax year, the due date of the FBAR form will be April 15. Pub. L. No. 114-41, § 2006(b)(11).

7. In 2002, Rosales became a United States citizen. During 2005-2012, Rosales was a United States person under Title 31.

8. During the 2005-2012 years at issue, Ms. Rosales and her former husband, Hector Carmona,[2] controlled a collection of companies in both Mexico and the United States that provided customs brokerage services, distribution services, air and maritime freight forwarding and ground transportation, both within Mexico, and between the United States and Mexico.

9. During the 2005-2012 years at issue Rosales with her husband, owned numerous business entities in Mexico and the United States to facilitate their customs brokerage business.

10. During 2005-2012, Rosales and her husband owned or controlled the following Mexican Corporations which had bank accounts in Mexico:

> Grupo Aduanero Carmi S.A. de C.V.;
> CS Carga S.A. de C.V.;
> Carmi Laredo S.C.;
> GA Carmi S.C.;
> Revisiones y. Manibras de Carga Aduanero S.C.;
> Apoyo Logistico Integral S.A. de C.V.; and
> CS Carga Forwarders S.A. de C.V.

11. These business entities in Mexico, listed in paragraph 10 above, held many foreign bank accounts necessary for the brokerage business at Banamex, BBV Bancomer, HSBC, Santander, Banorte and Scotia Bank.

12. Grupo Aduanero Carmi S.A. de C.V., and CS Carga S.A. de C.V., each had a bank account with International Bank of Commerce in the United States.

13. Rosales had financial interests in many accounts in Mexico, primarily by her and her former husband together being more than 50% owners in several foreign corporations. Both

---

[2] Rosales and Hector Carmona filed for divorce in 2013. Their divorce was finalized on April 17, 2014.

Rosales and her former husband failed to report the existence of their foreign corporations as required under Title 26. Rosales had financial interests and/or signature authority over the number of foreign accounts per year are as follows:

| Year | Unreported Accounts |
|---|---|
| 2005 | 46 |
| 2006 | 52 |
| 2007 | 60 |
| 2008 | 75 |
| 2009 | 70 |
| 2010 | 47 |
| 2011 | 49 |
| 2012 | 47 |

14. Based on documents given to the IRS, during 2005-2012, Rosales had signature authority over some 23 foreign accounts in Mexico related to her foreign entities. Based on documents given to the IRS, Rosales during 2005-2012 had signature authority over some 9 foreign accounts in Mexico held in the name of CS Carga SA DE CV. Based on documents given to the IRS, Rosales during 2005-2012 had signature authority over some 9 foreign accounts in Mexico held in the name of Revisones Y Maniobras DE Carga Aduanera, S.C.

15. During the 2005-2012 years at issue, Rosales also owned and controlled personal foreign financial accounts in Mexico. During the 2005-2012, Rosales had 5 of her own personal foreign financial accounts in which she had signature authority.

*Foreign Account balances exceeded $10,000 in each year form 2005 - 2012*

16. The annual aggregate account balances of all foreign accounts in which Rosales had a financial interest in and/or signature authority over, in USD, are as follows:

| Account Balance by year | | | | | | | |
|---|---|---|---|---|---|---|---|
| 2005 | 2006 | 2007 | 2008 | 2009 | 2010 | 2011 | 2012 |
| $1,620,676 | $3,597,836 | $3,399,750 | $3,693,732 | $2,132,112 | $2,778,269 | $4,423,426 | $3,432,935 |

17. It is clear that during 2005 through 2012 the aggregate balances in all of Rosales foreign accounts exceeded $10,000 in each year.

18. In 2005 through 2012, Rosales had a financial interest in, and or signatory authority over numerous financial accounts in Mexico which had aggregate account balances exceeding $10,000 in each year.

19. Thus, on or before June 30 of 2006, Rosales was required to file an FBAR reporting her interest in her foreign accounts for 2005.

20. Thus, on or before June 30 of 2007, Rosales was required to file an FBAR reporting her interest in her foreign accounts for 2006.

21. Thus, on or before June 30 of 2008, Rosales was required to file an FBAR reporting her interest in her foreign accounts for 2007.

22. Thus, on or before June 30 of 2009, Rosales was required to file an FBAR reporting her interest in her foreign accounts for 2008.

23. Thus, on or before June 30 of 2010, Rosales was required to file an FBAR reporting her interest in her foreign accounts for 2009.

24. Thus, on or before June 30 of 2011, Rosales was required to file an FBAR reporting her interest in her foreign accounts for 2010.

25. Thus, on or before June 30 of 2012, Rosales was required to file an FBAR reporting her interest in her foreign accounts for 2011.

26. Thus, on or before June 30 of 2013, Rosales was required to file an FBAR reporting her interest in her foreign accounts for 2012.

27. However, Rosales failed to timely file FBARs for 2005 through 2012 reporting her interest in and/or control over any foreign accounts in those years.

*Rosales' failure to disclose her foreign accounts was willful*

28.     In 2005 through 2012, Rosales had a financial interest in or signatory authority over, numerous foreign accounts in Mexico which had aggregate account balances exceeding $10,000. Thus, on or before June 30 of 2005, 2006, 2007, 2008, 2009, 2010, 2011 and 2012, Rosales was required to file an FBAR reporting her interest in these foreign accounts for the years 2005 and 2012, respectively.

29.     Rosales failed to timely file FBARs for 2005 through 2012 regarding her foreign accounts in Mexico.

30.     Rosales' failure to timely report her financial interest in her foreign accounts for 2005 through 2012 was willful.

31.     In 2004, the CPA that Rosales and her husband employed for their 2005-2012 return preparation, informed them directly or indirectly through Rosales' business representatives of the requirement to file FBARs.

32.     In preparation of Rosales' 2004 and 2005 income tax returns, Rosales' CPA stated that he informed Rosales of the requirement to file FBARs regarding any foreign accounts.

33.     On Schedule B, Part III Line 7a of Rosales' 2005 and 2006 income tax returns, Rosales denied that she had **any** foreign bank accounts.

34.     In 2007, Rosales' CPA, hired to prepare their 2005-2012 returns, discussed FBARs with Rosales' business representative. Rosales was aware of FBARs, and her CPA's discussion of FBARs with her business representative.

35.     In 2011, Rosales and her husband filed amended income tax returns, Forms 1040X, for the 2007 through 2009 years.

36. However, on Schedule B, Part III Line 7a of Rosales' amended income tax returns for 2007, 2008 and 2009, Rosales denied that she had **any** foreign bank accounts.

37. In 2011, Rosales' former husband represented to their CPA in an engagement letter that he and Rosales did not have any foreign accounts or foreign corporations. Upon information and belief, Rosales was aware of this representation.

38. Rosales filed Mexican income tax returns for alleged salaries she received from Mexican entities. However, Rosales failed to timely file any Forms 5471 for her Mexican entities during the 2005-2012 years reporting her ownership in foreign entities to the IRS. Rosales used her Mexican Bank accounts to pay tax to Mexico for her Mexican tax returns.

***Rosales funnels money into and out of a secret account in Mexico held in her maid's name to pay personal expenses in the U.S.***

39. In 2005, Rosales and her husband opened an account at Bancomer bank in Mexico to help their maid/housekeeper with the immigration process ("Maid's Account"). The Maid's Account was set up under the housekeeper's name, and Rosales and her former husband deposited funds in the account to make it appear that the housekeeper had assets. On information and belief, Rosales' funding of the Maid's Account was intended to help the maid become a permanent resident in the U.S.

40. During 2005 through 2009, Rosales had signature authority over the Maid's Account.

41. Rosales caused funds to be deposited from her Mexican entities' accounts into the Maid's Account. During 2005 through 2009 approximately $1,387,309 in USD was deposited into the Maid's Account. Rosales used the funds deposited into the Maid's Account for her own purposes including paying for construction of her residence.

42. Rosales failed to report these funds deposited into the Maid's Account as income on her 2005 through 2009 federal income tax returns.

43. Rosales also failed to file an FBAR report on the Maid's Account during 2005 through 2009 .

*Rosales' funneled money from her Mexican entities' foreign accounts to the U.S. to pay for personal expenses*

44. During the 2009-2012 tax years, funds were wire transferred from Mexican accounts of Rosales' Mexican entities Grupo Aduanero Carmi S.A. de C.V., GA Carmi S.C., Revisiones y. Manibras de Carga Aduanero S.C.**,** and Apoyo Logistico Integral S.A. de C.V., into CS Carga's and Grupo Aduanero IBC bank accounts in the United States.

45. Rosales and her husband then used these funds from the Mexican entities deposited into the IBS accounts to pay personal expenses such as credit card bills, home mortgage payments, a personal law-suit settlement and other miscellaneous personal expenses. Rosales failed to report these funds as income on her 2008-2012 federal income tax returns.

46. In 2010, Rosales and her husband caused the transfer of some $434,683 from their Mexican entities' accounts in Mexico to an entity in the United States for investment in real estate and payment of other personal expenses. Rosales failed to report this $434,683 on her 2010 federal income tax return.

47. Rosales concealed her interest in foreign accounts because revealing the accounts under her control would have disclosed her unreported income regarding her federal income tax returns.

*Rosales' 2007 and 2008 FBAR Penalty assessments*

48. 31 U.S.C. § 5321(a)(5) provides for the imposition of civil penalties for a willful failure to comply with the reporting requirements of Section 5314 – *i.e,* when the person

maintaining a foreign account fails to timely file an FBAR reporting that account despite having an obligation to do so. For violations involving the willful failure to report the existence of an account, the maximum amount of the penalty that may be assessed is 50% of the balance of the account at the time of the violation or $100,000, whichever is greater. 31 U.S.C. § 5321(a)(5)(C)(i).

49. Due to Rosales' willful failure to timely file FBARS reporting her financial interest in numerous foreign accounts for 2005 through 2012 a delegate of the Treasury Secretary assessed penalties against her pursuant to 31 U.S.C. § 5321(a)(5) on October 24, 2018, as follows:

| Year   | 2005      | 2006      | 2007      | 2008      | 2009      | 2010      | 2011      | 2012      |
|--------|-----------|-----------|-----------|-----------|-----------|-----------|-----------|-----------|
| Amount | $550,000  | $700,000  | $275,000  | $675,000  | $100,000  | $400,000  | $325,000  | $275,000  |

50. The IRS assessments of the 2005 through 2012 FBAR penalties against Rosales were timely. Pursuant to 31 U.S.C. § 5321(b)(1), the statute of limitations on the assessment of an FBAR penalty is six years from the date of the violation. The Forms TD F 90-22.1 or FBARs for the 2005 through 2012 tax years were due on June 30, 2006 through June 30, 2013, respectively. Thus, without any extensions, the last day for the assessment of the FBAR penalties for the 2005 through 2012 tax years was June 30, 2012 through June 30, 2019.

51. However, Rosales signed two consents to extend the time to assess Civil Penalties provided by 31 U.S.C. § 5321 for FBAR violations (FBAR penalties) for the 2005 through 2012 years. Rosales through the signed consents extended the statute of limitation for assessment for the 2005 through 2012 FBAR penalties to December 31, 2018. Accordingly, the IRS could

assess the FBAR penalties for the 2005 through 2011 year before December 31, 2018.[3]  The FBAR penalties for 2007 through 2010 were timely assessed on October 24, 2018.

52.     A delegate of the Treasury Secretary also gave notice and demand of the penalty assessments for 2005 through 2012.

53.     Despite the notice and demand for payment, Rosales has failed to pay the 2005 through 2012 FBAR penalties assessed against her.  Therefore, interest and other statutory additions continue to accrue on the unpaid assessments.

54.     As of March 9, 2020, Rosales owes the United States $3,660,920.55 in penalties assessed under 31 U.S.C. § 5321, including interest and other statutory additions which have accrued and will continue to accrue as provided by law.

55.     Likewise, this suit is timely because it was commenced within two years of the assessment date.  Pursuant to 31 U.S.C. § 5321(b)(2), a suit to reduce to judgment an FBAR assessment must be commenced within two years from the date of assessment.  Thus, the United States has until October 24, 2020, to timely file this suit.

WHEREFORE, the United States of America requests as follows:

1.     That the Court enter judgment in favor of the United States against Maria E. Rosales for the 2005 through 2012 FBAR penalty assessments against her in the aggregate amount of $3,660,920.55 as of March 9, 2020, plus accruals and such other and further relief as the Court deems just and proper; and

2.     That the United States shall recover a surcharge of 10% of the amount of the debt as authorized under 28 U.S.C. § 3011 for using pre-judgment and/or post judgment debt collection remedies under 28 U.S.C. § 3101 et seq., and 28 U.S.C. § 3201 et seq., respectively.

---

[3] The FBAR penalty for the 2012 year could be assessed by 6/30/2019 without extensions.

RICHARD E. ZUCKERMAN
Principal Deputy Assistant Attorney General

/s/ Herbert W. Linder
HERBERT W. LINDER
Ohio Bar No. 0065446
Attorney, Tax Division
Department of Justice
717 N. Harwood, Suite 400
Dallas, Texas 75201
(214) 880-9754 (214) 880-9741 (facsimile)
Herbert.W.Linder@usdoj.gov

ATTORNEYS FOR UNITED STATES